IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN FUREY | : | CIVIL ACTION |
| | : | |
| vs. | : | NO. 09-2474 |
| | : | |
| TEMPLE UNIVERSITY et al | : | |

**RESPONSE BRIEF TO TEMPLE DEFENDANTS'
MEMORANDUM OF LAW OPPOSING PLAINTIFF'S
REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF**

**Introduction**

Kevin Furey, a 21 year old student of Temple University, expelled on the perjured testimony of off-duty Police Officer Travis Wolfe (who acknowledges a lengthy and violent juvenile criminal record - see Wolfe's essay acknowledging his criminal past attached hereto as Exhibit A), through his undersigned attorney, responds to Temple defendants' opposition to preliminary injunctive relief as follows:

**Background Facts**

Plaintiff never brandished a machete on April 5, 2008 at 3:00 a.m. as defendants allege.  In fact, plaintiff was at the trunk of his car when Travis Wolfe, dressed in sneaks, dungarees, black baseball hat and black jacket, accompanied by 4 teenagers similarly dressed, approached plaintiff, asking plaintiff "what he had?"  When plaintiff replied "none of your business," Travis Wolfe drew a gun, cocked it, pointed the gun at plaintiff, while his associates screamed "shoot him."  At no time did Travis Wolfe identify himself as a police officer, although his associates did shout "he's a cop" intermittent with "shoot him."

1.

At no time during the incident did plaintiff believe Travis Wolfe was a "cop" since he did not act in a professional manner nor identify himself as a Philadelphia Police Officer with name and badge number. Plaintiff, who had gone to the car to retrieve a machete, which is not an illegal weapon and can be purchased at any hardware store, intended to use it to assist fellow Temple student John Fisher, who inadvertently locked himself out of his bedroom, gain entrance to the bedroom. Instead of a quick trip to his car, plaintiff ran into a gang who threatened to shoot him if he did not throw down the machete. Plaintiff, who never moved from the trunk of the car nor approached Wolfe in a threatening manner, threw the machete back into the trunk and was immediately assaulted by Wolfe and his gang of associates.

Plaintiff, Kevin Furey, was taken to Hahnemann Hospital with serious facial and knee injuries. Then plaintiff was arrested for an alleged assault on Travis Wolfe. The arrest report, prepared from Wolfe's statement, is telling for its lack of any witness information. It appears Wolfe intentionally tried to hide the fact that he was accompanied by underage teenagers, all of whom were coming from a drug and alcohol party.

Plaintiff did not violate Temple's Code of Conduct since he did not attack Travis Wolfe, but, to the contrary, Travis Wolfe attacked plaintiff, drawing a gun upon him and even after plaintiff discarded the machete (which is not illegal but was purchased at Home Depot and which plaintiff did not intend to use in an illegal manner), Travis Wolfe attacked plaintiff causing serious physical injuries and permanent facial scars.

During the alleged fair and impartial hearing, plaintiff was unrepresented, since plaintiff's attorney mother was not allowed to represent him and during the proceeding was told "to shut up" and threatened with expulsion from the proceeding if she did not do so. It was not a fair and impartial proceeding but resembled a "kangaroo court" with the panel members making unfounded accusations, lacking in any evidentiary proof that "plaintiff was intoxicated." The panel chairman, defendant Greenstein, exhibited a "bias" and "prejudice" against plaintiff and stated that he believed Travis Wolfe's testimony because "Travis Wolfe was a Philadelphia Police Officer." At the hearing, defendant Greenstein commented "Why would a Philadelphia Police Officer lie?" Defendant Greenstein also indicated that Temple took very seriously "attacks on police officers." The panel failed to take into consideration the fact that Travis Wolfe was not on duty and was not working at the time of the incident, but was dressed like a rapper in the company of teenagers coming from the drug and alcohol party at the time of the incident. (The "Lights Out Unpaid Edition" party flyer is attached hereto as Exhibit B).

Although Travis Wolfe claims he was not at this party, only going there to pick up the teenagers, an investigator of the Joseph Gill Investigation firm attended another party held by this group and observed Travis Wolfe acting as security for the party, and one of the teenagers who accompanied Travis Wolfe on April 5, 2008 when Kevin Furey was assaulted, was observed drinking liquor from a bottle and taking money at the door to attend this pay party (A copy of the Investigation Report is attached hereto as Exhibit C and a copy of the party flyer is attached hereto as Exhibit D).

3.

Plaintiff's due process and equal protection rights were most certainly violated by Temple's failure to provide minimal due process to plaintiff, a student attending the school, who paid tuition and has not only been denied his right to a higher education, but denied his grades and credits earned while attending the school and which credits were paid for by him.  <u>Temple not only expelled plaintiff but continued to hold his credits hostage</u>, denying him any opportunity to attend another college or university.

**Argument**

**A.  DEFENDANTS ARGUE AND MISREPRESENT THAT NO HARM WILL RESULT IF A PRELIMINARY INJUNCTION IS NOT ISSUED SINCE PLAINTIFF CAN TRANSFER HIS CREDITS TO ANOTHER SCHOOL; HOWEVER, AS OF JULY 16, 2009, DEFENDANT TEMPLE REFUSES TO RELEASE PLAINTIFF'S TRANSCRIPT AND THE EXPULSION HAS MADE IT IMPOSSIBLE FOR PLAINTIFF TO GAIN ENTRANCE TO ANY OTHER COLLEGE OR UNIVERSITY**

In its brief, Temple has misrepresented that there will be no harm if this Court refuses to issue the requested preliminary injunction.  On page 8 of its brief in a footnote, the defendant states that it is not holding plaintiff's transcript hostage as part of its disciplinary process.  This is an <u>untruth</u> and blatant misrepresentation made by Temple to this Court.  <u>There is no financial hold on plaintiff's transcript.  There is a judicial hold on plaintiff's transcript preventing plaintiff from transferring credits to any other school</u>.  Attached hereto as Exhibit L is an Affidavit from George P. Furey, Jr. swearing that on July 15, 2009 at approximately 3:00 p.m. he contacted Temple's Registrar Office and was informed that plaintiff's transcript <u>had a judicial hold on it</u> and a transcript <u>could not be released to plaintiff or sent to any college or university</u>.

School starts in approximately one month and plaintiff is unable to even attempt to apply to another college or university because of Temple's vindictive behavior in refusing to release his transcript. Admittance to any other school is impossible without a transcript, not even mentioning the difficulty of gaining admission to another school after having been expelled. Temple's argument that plaintiff has not shown irreparable harm is not true. Plaintiff will suffer irreparable harm if the injunction is not issued.

Temple argues that plaintiff is a danger to other students and police officers. There is a complete lack of any evidence to any of these outrageous allegations. Plaintiff assaulted no one. Plaintiff was the one assaulted. Temple allowed plaintiff to remain a student at their school for over a year after the incident. Even after plaintiff was expelled after the incident, Temple allowed plaintiff to remain in the school with the appeal not being affirmed for another two months, from March 25, 2009 through May 27, 2009. It is obvious that Temple did not consider plaintiff a threat to other students or police officers when it allowed plaintiff to continue at the school from April 5, 2008 through May 27, 2009, with plaintiff having no other disciplinary actions, prior or subsequent, until plaintiff ran into the rogue cop, Travis Wolfe, traveling the streets of North Philadelphia with at least 3 identified associates, all of whom appeared to be a gang, who were confronting plaintiff for the purpose of mugging plaintiff, who was by himself at the trunk of the car minding his own business with nobody else around. At the time Travis Wolfe and his associates approached plaintiff, plaintiff was not threatening anybody since there was nobody else around. Even Travis Wolfe

acknowledges that plaintiff was by himself and that the partygoers were at the other end of the block inside the house where the wild paid party was being held with lots of drugs and booze available, as the flyer attests (Exhibit B).

Again, Temple lies to this Court that great harm will result if an injunction is issued. Plaintiff attended classes at Temple and was an enrolled student for over a year with nothing untoward happening. Plaintiff is not a disruptive individual and had no campus incidents until he was accosted by this rogue off-duty officer, who accosted plaintiff in the company of his cohorts and while plaintiff was alone. Travis Wolfe is the danger to Temple since he is on its campus drawing a gun on its students, as evidenced by his doing so to plaintiff. Travis Wolfe told the undersigned attorney that "plaintiff is lucky that he wasn't shot."

A preliminary injunction will cause no irreparable harm to Temple, but not issuing it will result in harm to plaintiff.

### B. THERE IS A TOTAL DENIAL OF DUE PROCESS WHEN A CONVICTION, IN THIS CASE, AN EXPULSION, RESTS ON PERJURED TESTIMONY OF THE ACCUSER

Travis Wolfe lied to the panel, committing perjury, since he was under oath, when he claimed to have been exonerated by Internal Affairs. Plaintiff asserts in his Complaint that he was denied a fair hearing as a result of this perjured testimony. Plaintiff brought this perjured testimony to the attention of Temple's lawyers and provided them with information to contact Sergeant Pace of the

acknowledges that plaintiff was by himself and that the partygoers were at the other end of the block inside the house where the wild paid party was being held with lots of drugs and booze available, as the flyer attests (Exhibit B).

Again, Temple lies to this Court that great harm will result if an injunction is issued. Plaintiff attended classes at Temple and was an enrolled student for over a year with nothing untoward happening. Plaintiff is not a disruptive individual and had no campus incidents until he was accosted by this rogue off-duty officer, who accosted plaintiff in the company of his cohorts and while plaintiff was alone. Travis Wolfe is the danger to Temple since he is on its campus drawing a gun on its students, as evidenced by his doing so to plaintiff. Travis Wolfe told the undersigned attorney that "plaintiff is lucky that he wasn't shot."

A preliminary injunction will cause no irreparable harm to Temple, but not issuing it will result in harm to plaintiff.

### B. THERE IS A TOTAL DENIAL OF DUE PROCESS WHEN A CONVICTION, IN THIS CASE, AN EXPULSION, RESTS ON PERJURED TESTIMONY OF THE ACCUSER

Travis Wolfe lied to the panel, committing perjury, since he was under oath, when he claimed to have been exonerated by Internal Affairs. Plaintiff asserts in his Complaint that he was denied a fair hearing as a result of this perjured testimony. Plaintiff brought this perjured testimony to the attention of Temple's lawyers and provided them with information to contact Sergeant Pace of the

Philadelphia Police Department, who would confirm that Travis Wolfe is under Department disciplinary proceedings as a result of his confrontation and assault on Travis Wolfe. A copy of the letter addressed to Kevin Furey from Police Headquarters, Charles Ramsey, Commissioner, is attached hereto as Exhibit E, and states that a Departmental Disciplinary Hearing against Travis Wolfe will be held on August 3, 2009 at 9:30 a.m. signed by Sgt. Pace of the Police Board of Inquiry. <u>This letter from the City of Philadelphia is more than sufficient evidence that Travis Wolfe lied to the Temple Disciplinary Panel</u>.

      Although plaintiff finds no case on point regarding expulsion from a university based on perjured testimony, plaintiff found numerous cases involving criminal cases which were overtured because they stemmed from perjured testimony.

      Instead of pursuing plaintiff and expelling him, although he was and is innocent of any crime, Temple should be pursuing Travis Wolfe and prosecuting him for his perjury, which is a crime in the State of Pennsylvania. (See <u>Crimes Code of Pennsylvania</u>, §§ 4902 and 4903).

      Under constitutional due process, public institutions must begin from the premise that the student is not in violation of university rules or regulations. After learning of the perjured testimony upon which its expulsion rests, Temple should be urging this Court to issue the preliminary injunction so that it (Temple) could investigate the disciplinary action being taken against Wolfe by his employer, the City of Philadelphia. The disciplinary action taken against Wolfe is because he violated police practice and procedure when he and his cohorts confronted and attacked plaintiff.

Wolfe lied to the panel not only about his being exonerated by Internal Affairs but his entire testimony was a lie in order to retaliate against Kevin Furey for Kevin Furey's reporting his behavior to Internal Affairs.

### C. DUE PROCESS WAS DENIED WHEN THE PANEL MEMBERS WERE NOT IMPARTIAL BUT WERE ACCUSERS, PROSECUTORS AND ADVERSARIES

An impartial and independent adjudicator is a fundamental ingredient of procedural due process. Gorman v. University of Rhode Island, 837 F.2d 7 (1st Cir. 1988). A student's interest in pursuing an education is included within the 14th Amendment's protection of liberty and property. Due process is essential in an academic setting and a student should not be punished except on the basis of substantial evidence. Obviously, a student should not be expelled based on perjured testimony.

A public university student who is facing serious charges of misconduct that expose him to substantial sanctions should receive a fundamentally fair hearing.

In the pending matter, one of the panel members, Kenyatta, is on the face page as a friend with Travis Wolfe. (Copy of face page is attached hereto as Exhibit F). Greenstein stated that he believed Travis Wolfe's testimony over Kevin Furey because Travis Wolfe was a police officer. The law is clear that a police officer's testimony and credibility is not greater just because he is a police officer and if any juror in a court of law made such an assertion, that juror would be automatically

removed from the jury panel. The prejudice against plaintiff by the panel is clear from the lengthy and hostile record in this case compiled at the disciplinary proceedings, in which 4 out of the 5 panel members were openly hostile toward plaintiff.

It appears that defendant Greenstein, in his opinion that police officers do not lie, is either naive or, for some undisclosed reason, protecting Wolfe and/or the police department. It is common knowledge that police who use excessive force on citizens often charge their victim with an assault on a law enforcement officer. These are known as the cover charges and are issued and pursued as a matter of course whenever force is used against a citizen. Many officers believe that a conviction on the underlying offense will justify the degree of force used, insulating them from discipline and civil liability. (See "Discovery and Proof in Police Misconduct Cases," Stephen M. Ryals, Wiley Law Publications, 1995).

Defendant Adler, another panel member, gave prejudicial and untrue testimony that plaintiff was intoxicated on the night of the incident, claiming the Hahnemann Hospital records stated the intoxication. This accusation by a panel member, defendant Adler, not only denied plaintiff a fair hearing, prejudiced the entire panel against plaintiff, but evidenced the lengths to which the panel went to deprive plaintiff of a fair and impartial hearing. Attached hereto as Exhibit G is a letter from the Head of the Emergency Department at Lourdes Hospital, Alfred Sacchetti, M.D., attesting to the fact that the emergency records do not indicate that plaintiff was drunk, but indicate just the opposite. Attached hereto as Exhibit H are defendant Adler's remarks at the hearing claiming plaintiff was drunk, which he was not.

Plaintiff was denied a fair and impartial hearing as a result of not only the perjured testimony, but the lack of a fair and impartial panel, who had conflicts of interest, bias and prejudice and provided untrue and malicious testimony as to plaintiff's sobriety at the time of the incident.

The panel was openly hostile to plaintiff and his witness and plaintiff's parents, including the undersigned attorney. The panel was openly biased and prejudiced against plaintiff, allowed the accuser, Travis Wolfe, to make open-ended statements without questions being posed, and would not allow plaintiff to object to his reading a prepared statement which he compiled during a break in his testimony while talking on the phone with an unknown person or witness, even though witnesses were sequestered. Travis Wolfe violated the rules against discussing his testimony with anyone while testifying, particularly, while under oath. Even though plaintiff objected to this break by Travis Wolfe while Wolfe was on the stand testifying, the panel allowed Travis Wolfe to read the statement he prepared during the phone conversation he had with an undisclosed person during the break in the proceedings. (A copy of the transcript showing plaintiff's objections to Travis Wolfe's testifying from a prepared statement written during a phone conversation that Travis Wolfe should not have made while testifying under oath is attached hereto as Exhibit I). As a police officer who testifies frequently in court, Travis Wolfe knew that he should not have discussed his testimony with anyone, let alone have someone assist him with his testimony while in the midst of his testimony under oath.

### D.  TEMPLE MISREPRESENTS THAT PLAINTIFF FAILED TO CONTACT DEFENDANT TEMPLE TO SCHEDULE A PRELIMINARY HEARING AND HEARING

Again, Temple misrepresents to this Court that plaintiff failed to contact them to schedule a pre-trial and a hearing.  On numerous occasions, plaintiff, through the undersigned attorney, contacted defendant Seiss regarding the scheduling of a pre-trial and a hearing.  Defendant Seiss never responded to plaintiff nor contacted the undersigned to schedule a hearing until the fall of 2008, after plaintiff had already registered for the fall term and paid tuition for that term.  Temple never advised plaintiff that he would or could be expelled for the alleged disciplinary violations.

Contrary to what defendants argue, Temple violated its own policies and procedures by failing to set a time for a University Disciplinary Committee Panel Hearing within 30 business days after the pre-hearing meeting.

A pre-hearing in this matter was held on December 15, 2008 and a panel hearing was scheduled to be held on January 12, 2009, but was unilaterally cancelled by defendants.  No hearing was held until March 25, 2009, more than 90 days after the pre-hearing; not within the 30 day period required by Temple's Code of Conduct.  (A copy of page 18 of Temple's Code of Conduct is attached hereto as Exhibit J).  The undersigned attorney, on behalf of plaintiff, did not agree or approve of the unilateral continuance of the January 12, 2009 hearing.

Plaintiff was prejudiced by the pre-hearing not being held in a timely fashion, being scheduled almost 9 months after the incident and a full committee hearing not being held until almost a year after the hearing, with the final expulsion taking place more than a year after the April 5, 2008 incident.

11.

Plaintiff has been greatly prejudiced by this delay and Temple's complete and utter failure to follow its own policies and procedures promulgated by Temple and set forth in its Policies and Procedures Manual under Title "Student Code of Conduct," issued by the Office of the President, effective as of January 1, 2004, revised on July 31, 2006.

Plaintiff has been deprived of his fundamental right to a higher education by Temple's failure to abide by its own policies and procedures. Temple allowed Kevin Furey to <u>attend and pay</u> tuition at its University, depriving him of his time, tuition monies and credits by its failure to hold disciplinary proceedings in a timely fashion.

If a preliminary injunction is not issued by this Court, irreparable harm will result to plaintiff, which harm will continue since plaintiff is unable to transfer credits, enroll in any other institution of higher education, without credits and without the removal of the expulsion from his record. Temple is well aware that every college and university inquires of a prospective student if that student has ever been expelled from another college or university. An affirmative answer to this inquiry will certainly prevent admission.

### E.  TEMPLE MISREPRESENTS THAT PLAINTIFF WAS ALLOWED COUNSEL AND WAS REPRESENTED BY THE UNDERSIGNED ATTORNEY AT THE PANEL HEARING; AGAIN TEMPLE MISLEADS THIS COURT

Plaintiff was not allowed counsel at the panel hearing. Although his mother, the undersigned attorney, was allowed to be present at the proceedings, she was told to "shut up" and was threatened with expulsion from the proceedings if she failed to do so. (Copy of applicable transcript pages attached hereto as Exhibit K).

Plaintiff, a college student with no legal training, was for all intents and purposes, by himself and was not equipped to represent himself. In fact, since this incident, plaintiff has been suffering from depression and post-traumatic stress and has been under the treatment of Dr. Vicki Morrow for his emotional trauma.

It should be pointed out that University counsel, defendant Valerie Harrison, was present throughout the hearing and her presence certainly indicated to these faculty members and student panel members that the University considered this matter serious and wanted plaintiff expelled from Temple. The entire proceedings were not cordial but were antagonistic, belligerent and accusatory toward plaintiff. Travis Wolfe was even permitted to make derogatory remarks, not only against plaintiff but his attorney mother as well.

Plaintiff believes that defendant Harrison not only indicated by her presence that Temple wanted plaintiff expelled but believes she may have discussed his expulsion with the panel members. At the very best, defendant Greenstein, the chairman of the panel, must have obtained information from someone since no evidence of Temple's jurisdiction over 18th Street and Monument Avenue was introduced at the hearing, whereas defendant Greenstein, at the start of the hearing, asserted that the location was within 38 feet of Temple's jurisdiction. The source of defendant Greenstein's information on this particular fact was never disclosed.

13.

### F.  PLAINTIFF WAS DENIED EQUAL PROTECTION SINCE AS A CAUCASIAN STUDENT HE WAS TREATED DIFFERENTLY AND SUBJECT TO DISCRIMINATING <u>TREATMENT VIS A VIS NEGRO STUDENTS</u>

Plaintiff was subjected to disparate treatment as he alleges in his Complaint, since plaintiff is familiar with a Caucasian student who was blinded by a Negro student, who was subjected to no discipline by defendant Temple.  Although defendant Ainsley Carry was aware of the assault upon plaintiff, defendant Carry claimed Temple could not take any action against this Negro student even though the student is being criminally prosecuted by the Philadelphia District Attorney's Office.  Plaintiff should be permitted to pursue this discriminatory treatment exhibited by Temple and this Court should allow discovery in this regard.

<u>Plaintiff can show that Temple has violated the 14th Amendment by violating his right to due process and equal protection</u>.

### G.  PURPOSE OF PRELIMINARY INJUNCTION AND <u>RIGHT TO ISSUANCE OF A PRELIMINARY INJUNCTION</u>

The application for a preliminary injunction is not a final determination on the merits.  Its purpose is not to determine any controverted rights, but to prevent further perpetuation of injury and thus, to protect property or rights until the issues can be decided at a full hearing.  Accordingly, in determining whether to grant a preliminary injunction, the District Court must consider the following factors:

First:       the likelihood that the party requesting the injunction will succeed on the merits;

14.

      Second:       the potential for irreparable harm if the injunction is denied;

      Third:       the hardship to the movant if injunctive relief is denied; and

      Fourth:       the effect of the court's ruling on the public interest.

See: <u>Ross-Simons of Worwick, Inc. V. Baccarat, Inc.</u>, 102 F.3d 12 (1st Cir. 1996).

      In its decision making regarding a preliminary injunction, a District Court has a duty to balance the interests of all parties and weigh the damage to each. See: <u>LA Memorial Coliseum Com'n v. National Football League</u>, 634 F.2d 1197 (9th Cir. 1980).

      In this pending matter, defendants have shown no harm to them if the preliminary injunction is issued, alleging without any basis in fact that plaintiff is a danger to other students and police officers. This outrageous allegation is belied by the facts in this case. After the April 5, 2008 incident, plaintiff continued at Temple until the end of the semester in May, 2008. Plaintiff was allowed to return in the Fall '08 semester, and again, in the Spring '09 semester until the end of the term.

      <u>The expulsion was not finalized</u> until May 29, 2009, when plaintiff received a letter from defendant Powell. During this over 14 month period, plaintiff was not perceived nor was he a danger to other students or to any police officers. Prior or subsequent to this incident, plaintiff had no altercation with any individual. Plaintiff has no criminal record, unlike Travis Wolfe, who has a lengthy juvenile criminal record and who assaulted and battered plaintiff without any cause or reason and most probably, has assaulted and battered many other United States citizens, particularly with his cover as a Philadelphia Police Officer brandishing a gun and a badge.

No harm will result to Temple by the issuance of this preliminary injunction, but plaintiff most definitely will experience great harm if he is not permitted to continue his education by not being allowed to attend Temple or any other higher institute of learning, with Temple holding his credits hostage and refusing to remove the expulsion from his record.  Irreparable injury will result to plaintiff in the absence of an injunction.  <u>Winter v. National Res. Def. Council, Inc.</u>, 129 S.Ct. 365 (2008).

Since plaintiff's expulsion, equivalent to a conviction, rests on perjured testimony as well as his being subjected to a hearing before a biased and prejudiced panel, which presented false evidence against him and came with a preconceived impermissible notion for a juror that a police officer's testimony was more credible because he was a police officer, it is likely plaintiff will prevail on the merits of the case.  Plaintiff is able to prove all the allegations he has made regarding the constitutional violations of due process and equal protection.

Since this case involves only the parties, the issuance of an injunction will have no impact on the public interest.  This public interest consideration for the issuance of an injunction is not relevant in this particular case.

**Conclusion**

Plaintiff is entitled to a preliminary injunction since he has presented a colorable factual basis to support his claim on the merits and his contention of irreparable harm if an injunction is not granted. Plaintiff urges this Court to schedule a hearing on his request for a preliminary injunction and allow expedited discovery as plaintiff has requested in his prior motion.

Respectfully submitted,

_____
MARGARET BOYCE FUREY
Identification No. 02461
400 Four Tower Bridge
200 Barr Harbor Drive
West Conshohocken, Pa. 19428
610-397-0125
Attorney for plaintiff